Filed 12/29/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JOSHUA ZAMORA GONZALES, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> CALIFORNIA VICTIM COMPENSATION BOARD, <br><br> Defendant and Respondent; <br><br> PEOPLE OF THE STATE OF CALIFORNIA, <br><br> Real Party in Interest. | B323360 <br><br> (Los Angeles County Super. Ct. No. 20STCP04185) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mary H. Strobel, Judge. Affirmed.

The Law Offices of Jarrett Adams, Jarrett Adams, Lillian C. Gaither and Megan D. Baca for Plaintiff and Appellant.

Rob Bonta, Attorney General, Jodi L. Cleesattle, Senior Assistant Attorney General, Donna M. Dean, Supervising Deputy Attorney General, and Andrew Huang, Deputy Attorney General, for Defendant and Respondent.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Senior Assistant Attorney General, Julie A. Hokans, Supervising Deputy Attorney General, and Jessica C. Leal, Deputy Attorney General, for Real Party in Interest.

\* \* \* \* \* \*

In California, inmates who are exonerated of their crimes may apply to an administrative board for compensation for the time they were erroneously imprisoned. (Pen. Code, § 4900 et seq.)[1] Here, an inmate convicted as the shooter in a gang-related drive-by shooting applied for such compensation after the United States Court of Appeals for the Ninth Circuit (the Ninth Circuit) granted the inmate's habeas corpus petition and overturned his convictions on the basis of insufficiency of the evidence presented at trial. Under the pertinent statutes in effect in 2020, an inmate's entitlement to compensation in this situation turned on his ability to prove, by a preponderance of the evidence, his "factual innocence." (Former § 1485.55, subd. (b), Stats. 2019, ch. 473 (Sen. Bill No. 269), § 1, eff. Jan. 1, 2020; former § 4903, subd. (a), Stats. 2019, ch. 473 (Sen. Bill No. 269), § 3, eff. Jan. 1, 2020;

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2

Cal. Code Regs., tit. 2, § 644, subd. (d).)[2]  In determining whether the inmate has carried this burden, the "factual findings and credibility determinations establishing the court's basis for granting a writ of habeas corpus" are "binding" in the compensation proceeding before the board.  (§§ 4903, subd. (b), 1485.5, subds. (c) & (d).)  This appeal presents two questions.  First, does the conclusion of a habeas court granting relief that the evidence at trial was insufficient to support an inmate's conviction beyond a reasonable doubt automatically establish that inmate's factual innocence by a preponderance of the evidence?  Second, do the habeas court's summary of the trial record as well as commentary on the relative strength or weakness of the evidence in that record—in the course of granting relief to the inmate—constitute "factual findings" that are "binding" in the subsequent administrative proceeding to award that inmate compensation?  We hold that the answer to each question is "no."  We further conclude that, even if there were "factual findings" in this case, the board treated them as binding.  As a result, we agree with the trial court that the board's denial of compensation to the exonerated inmate in this case does not warrant the issuance of a writ of administrative mandamus and accordingly affirm.

---

[2]     Unless otherwise noted, all further references to the statutes governing an inmate's entitlement to compensation for erroneous conviction and imprisonment are to the statutes in effect at the time the administrative proceedings in this case were conducted.

**FACTS AND PROCEDURAL BACKGROUND**

**I.     The Crime**

On a Saturday night in October 2008, three men standing on a street corner in a residential neighborhood down the block from a party were shot. The shooter fired from the backseat of a "black" or "dark-colored," newer model Cadillac with rims and three people riding inside. The shooting was gang-related: The men were "talking shit" to passersby, and the shooter in the Cadillac made the archetypical gang challenge—demanding to know, "Where you fools from?"—before opening fire. All three shooting victims survived their wounds.

No direct evidence tied Joshua Zamora Gonzales (Gonzales) to the shooting. No witness, including none of the victims, positively identified Gonzales as the shooter. One victim testified that Gonzales was *not* the shooter, but subsequently clarified that he did not see who shot him. A search of Gonzales's home did not turn up any firearm or firearm paraphernalia. No one came forward to say Gonzales was involved. And Gonzales, in a post-arrest interview, denied being the shooter.

Thus, all evidence of Gonzales's involvement in the shooting was circumstantial. He was present at the party. He wore a baseball cap sporting the Pittsburgh Pirates' "P" logo signifying the Playboyz street gang, bragged to other partygoers that he was a member of the Playboyz gang who went by the moniker "Knuckles," and had also previously told police he was a member of that gang. The victims wore "L.A. gear" worn by one of the Playboyz's rival gangs. Gonzales admitted to driving by the victims while in the backseat of a newer model Cadillac with rims and containing three people, although he claimed the Cadillac was "red" "like a fire truck" or "light red." Moments

4

before the shooting, the victims "started talking shit" *to Gonzales* and Gonzales responded, "what's up." Gonzales had two particles of gunshot residue on his right hand, although that residue—because the test was not conducted until 12 hours after the shooting and because Gonzales had washed his hands in the interim—was equally consistent with Gonzales touching a surface with gunshot residue as with Gonzales firing a gun. In his post-arrest interview, Gonzales also changed his story about being present at the location of the shooting and interacting with the shooting victims and repeatedly refused to answer questions for fear of being known as a "snitch."

## II. Gonzales's Prosecution and Conviction

The People charged Gonzales (in San Bernardino County) with three counts of attempted premeditated murder (§§ 187, subd. (a), 664), and shooting from a motor vehicle (§ 12034). The People further alleged that Gonzales personally and intentionally discharged a firearm causing great bodily injury (§ 12022.53, subds. (b)-(d)), personally and intentionally discharged a firearm from a motor vehicle (§ 12022.55), and committed the charged crimes for the benefit of, at the direction of, or in association with a criminal street gang (§ 186.22, subd. (b)(1)(C)).

In December 2009, a jury convicted Gonzales of all charged crimes and found true the firearm and gang allegations.

In January 2010, the trial court sentenced Gonzales to prison for 86 years and eight months.

## III. Review of Gonzales's Convictions

### A. *Direct appeal*

On direct appeal of his conviction, Gonzales challenged the sufficiency of the evidence underlying his convictions. The California Court of Appeal, Fourth Appellate District, held in an

unpublished opinion that circumstantial evidence supported the jury's finding that Gonzales was the shooter—namely, (1) a partygoer's testimony that Gonzales was "dressed like a Playboyz gang member and associating with other gang members"; (2) Gonzales's "admissions to the police that he attended the party, dressed as [the partygoer] described him, and that he was in a car, passing by a group of men on the street at the time of the shooting"; and (3) Gonzales's "positive gunshot residue test." (*People v. Gonzales* (June 3, 2011, E050175) [nonpub. opn.].)

The California Supreme Court denied Gonzales's petition for review.

### B.  *Federal habeas corpus review*[3]

#### 1.  *District Court proceedings*

Gonzales filed a petition for a writ of habeas corpus in the United States District Court for the Central District of California.  Among other claims, he argued that his convictions were not supported by substantial evidence.  In a July 2013 order, the court rejected Gonzales's claim, "find[ing] no defect in the state [appellate] court's analysis and determination" regarding the sufficiency of the evidence.  (*Gonzales v. Gipson* (July 19, 2013, ED CV 12-862-BRO (PLA).)

#### 2.  *Ninth Circuit proceedings*

Gonzales appealed the denial of his habeas petition to the Ninth Circuit.

---

[3]  Gonzales also filed a petition for writ of habeas corpus in California state court on Eighth Amendment grounds, but that petition was denied and that basis for relief is not at issue in this appeal.

6

In August 2016, a three-judge panel initially affirmed the denial in a 2-1 decision, with one judge dissenting. (*Gonzales v. Gipson* (9th Cir. 2016) 659 Fed.Appx. 400.)

Gonzales petitioned for rehearing, and the three-judge panel granted the petition and issued a new 2-1 decision in April 2017. (*Gonzales v. Gipson* (9th Cir. 2017) 687 Fed.Appx. 548.) In this decision (which was later modified), the two-judge majority ruled that "the evidence [was] constitutionally insufficient to support Gonzales's convictions." The majority then offered six reasons for this conclusion, each of which summarized and/or made observations about the trial record:

● "First, no eyewitness testified that Gonzales was the shooter or could identify any of the occupants of the vehicle from which the shots were fired."

● "Second, testimony concerning Gonzales's baseball cap and gang affiliation does not distinguish him from other people present on the night of the shooting. . . . No witness testified that the shooter wore a baseball cap that matched the one Gonzales wore that night. The evidence did not establish that a person known as 'Knuckles' was connected with the shooting, nor that the victims were shot to benefit the Playboyz gang specifically."

● "Third, witnesses' descriptions of the car from which the shots were fired did not match descriptions of the car in which Gonzales claimed he was a passenger" because Gonzales "consistently stated" he was in a "light red Cadillac," while witnesses described a "black or dark colored" Cadillac. Also, Gonzales "repeatedly denied ever shooting a gun."

● "Fourth, although Gonzales stated during his police station interview that he was the rear passenger in a car that

7

drove by some men on the street who were 'talking shit' and that he later heard gunshots, he did not clearly admit that he exchanged words with or motioned to anyone from the backseat of his friend's light red Cadillac."

- "Fifth, the two particles of gunshot residue on Gonzales's right hand do not connect him to any gun fired on the night of the shooting" because, due to the delay in time and hand-washing, "it was just as likely the particles came from contacting a surface contaminated with gunshot residue as from firing a firearm, handling a firearm, or being in close proximity to a discharged firearm."

- "Sixth, despite a thorough search, police officers found no weapons, bullets, gun magazines, gun cleaning devices, or other firearm paraphernalia at Gonzales's home."

Because Gonzales's "convictions rest on" what the two-judge majority characterized as "a speculative and weak chain of inferences that he was the shooter and that he personally discharged a firearm," the majority reiterated its conclusion that the evidence at trial was "constitutionally insufficient" because it "does not permit any rational trier of fact to conclude that Gonzales was guilty beyond a reasonable doubt."

## IV. Administrative Proceeding Seeking Compensation

### A. *Filing of petition for compensation*

Following his release from custody on July 25, 2017, Gonzales in August 2017 filed a claim with the California Victim Compensation Board (the Board) seeking $450,240 in compensation for the 3,216 days he was incarcerated under the now-invalid convictions.

The Board stayed the proceedings while Gonzales litigated a petition for a finding of his factual innocence in the San

Bernardino County Superior Court. After an evidentiary hearing at which Gonzales testified, the court denied his petition, finding that the sum total of evidence—including that Gonzales "was at the location [of the shooting], matched the description, was wearing a hat consistent with gang involvement, was untruthful [during his post-arrest interview]," and had "gunshot residue on his hand"—indicated that Gonzales was, "in fact, factually culpable and guilty."[4]

## B. *Hearing*

At the behest of the Board, a hearing officer conducted an evidentiary hearing on Gonzales's petition for compensation in April 2019.

The People introduced an enhanced audio recording of Gonzales's post-arrest interview, which made it possible to hear and understand a portion of Gonzales's statement that was previously "inaudible" in the version that was part of the trial record; in that portion, Gonzales admitted that he had asked the men on the street corner, "Oh, where are you fools from, dawg?"

Gonzales introduced an affidavit from "Dave Herrada," who declared that he drove his "light red colored Cadillac" the night of the party and that no one from the car fired a firearm. Gonzales did not call Herrada to the stand, so he was not subject to cross-examination.

Gonzales also testified. Gonzales reaffirmed that he was at the party, that the men on the corner approached him and his friends "aggressively" as they drove by in a "light red Cadillac," and that he and his friends ignored those men and drove off. Gonzales denied asking the men, "[W]here are you fools from?"

_____

4    The court also added its view that Gonzales "should still be in prison for this crime."

9

until he was confronted with the enhanced recording, at which point he admitted it. Gonzales denied being a member of the Playboyz gang, but acknowledged that he had been photographed throwing Playboyz "gang signs," that he had registered as a Playboyz gang member with the police, that he proclaimed himself to be "Knuckles from Playboyz" on a social media profile, and that he had told the police in his post-arrest interview that he bragged to other partygoers he was "Knuckles" with the Playboyz gang.

### C.   *Ruling*

Following post-hearing briefing, the Board in September 2020 adopted the hearing officer's 31-page ruling denying Gonzales's claim for compensation. Specifically, the Board concluded that Gonzales "failed to satisfy his burden of proving he is more likely innocent, than guilty, of his vacated convictions" and "failed to demonstrate his innocence by a preponderance of evidence."

The Board acknowledged—as Gonzales and the People urged—that it was bound by "any factual finding[s]" of the Ninth Circuit in granting habeas relief and by the San Bernardino County Superior Court in denying a finding of factual innocence, but found that those two sets of findings were "not necessarily inconsistent" because the Ninth Circuit's ruling assessed whether the evidence at trial was sufficient to prove guilt beyond a reasonable doubt, while the Superior Court assessed whether the trial evidence and additional evidence proved that Gonzales was innocent by a preponderance of the evidence. The Board went further by treating the Ninth Circuit's "characterizations of the trial court record" as "factual findings," and listed several of the characterizations set forth in the Ninth Circuit's decision.

The Board then enumerated three reasons for its conclusion that Gonzales had not met his burden of establishing his factual innocence.  First, the Board set forth the evidence from the trial that circumstantially inculpated Gonzales, including (1) "his presence at the crime scene"; (2) the "striking number of shared circumstances between Gonzales and the shooter," such as both leaving the party around the same time in a newer model Cadillac with rims and with three people in it, both being seated in the back seat of the Cadillac, both wearing baseball caps, both passing the three men on the street corner at around the same time, and both asking the men where they were from; (3) the presence of two particles of gunshot residue on Gonzales's hand, "suggest[ing] the possibility that he was the shooter"; and (4) his status as "an admitted and documented" member of a street gang in what was a "gang-motivated" shooting.  Second, the Board found Gonzales's testimony before the hearing officer to be "not credible" given that he "falsely described" his criminal history, and given the sheer number of "patently inconsistent statements" he made about the shooting—which included both "admitt[ing] and den[ying]" (1) "being a member of the Playboyz gang," (2) "being present when shots were fired," and (3) "asking the victims where they were from." Third, the Board found Herrada's declaration "untrustworthy" because (1) his name did not exactly match the name given by Gonzales as someone who was with him on the night of the shooting; (2) the declaration omits the name of the third person in the Cadillac; and (3) the declaration contradicted some of Gonzales's own statements, which also were internally inconsistent, regarding who owned and who drove the Cadillac on the night of the shooting.

11

## V.      Administrative Mandamus Proceedings

In December 2020, Gonzales filed a petition for a writ of administrative mandamus in the Los Angeles County Superior Court seeking to overturn the Board's denial of his claim for compensation.[5]  After the Board answered the petition, Gonzales, the Board, and the People (as the real party in interest) briefed whether Gonzales was entitled to relief.  The court convened a hearing in July 2022, and issued a 16-page written ruling a week later.

The court ruled that the Board's denial of Gonzales's compensation claim did not constitute a prejudicial abuse of discretion because it was "supported by substantial evidence." The court found that the Board had "give[n] 'binding effect'" to both the Ninth Circuit's findings and the San Bernardino County Superior Court's findings, and was able to do so because those two courts applied "different . . . standards."  The court next found that the Board's conclusion that Gonzales had not proven his factual innocence by a preponderance of the evidence was reasonable and supported by substantial evidence.

## VI.   Appeal

Following the entry of judgment, Gonzales filed this timely appeal.

---

[5]      Gonzales also styled his petition as one for traditional mandamus, but that type of writ is unavailable where, as we conclude in Section I of the Discussion below, an administrative agency holds an evidentiary hearing and is vested with discretion to determine the facts (and hence does not have a ministerial duty to act in a certain way).  (*Bunnett v. Regents of University of California* (1995) 35 Cal.App.4th 843, 848.)

## DISCUSSION

Gonzales argues that the trial court erred in denying his petition for a writ of administrative mandamus seeking to compel the Board to grant his claim for compensation for erroneous conviction and imprisonment.[6]

## I. Pertinent Law

### A. *Administrative mandamus*

A person aggrieved by the ruling of an administrative agency may file a petition for a writ of administrative mandamus to invalidate that ruling. (Code Civ. Proc., § 1094.5, subd. (a).) As pertinent here, a writ will issue if the administrative agency has committed a "prejudicial abuse of discretion," which exists when the ruling is "not supported by the [agency's] findings" or those "findings are not supported by the evidence." (*Id.*, subd. (b).) The degree of judicial scrutiny turns on the extent to which the agency's ruling involves or substantially affects a "fundamental, vested right." (*Bixby v. Pierno* (1971) 4 Cal.3d 130, 139, 144; *Interstate Brands v. Unemployment Ins. Appeals Bd.* (1980) 26 Cal.3d 770, 778.) Where such rights are at stake, the trial court's task is to independently evaluate whether the agency's findings are supported by the record, and *our* task, in reviewing the grant or denial of such a writ, is to examine whether *the trial court's* ruling is supported by substantial evidence. (*Berlinghieri v. Department of Motor Vehicles* (1983) 33

---

**6** In his briefs on appeal, Gonzales purports to also challenge the San Bernadino County Superior Court's denial of his petition for a finding of factual innocence, but Gonzales forfeited any challenge to that ruling by failing to timely appeal it. (*In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 761, fn. 8 ["if an order is appealable, appeal must be taken or the right to appellate review is forfeited"].)

Cal.3d 392, 395; *JKH Enterprises, Inc. v. Department of Industrial Relations* (2006) 142 Cal.App.4th 1046, 1057-1058.) But where no such rights are at stake, the trial court's task is to more deferentially evaluate whether the agency's findings are supported by substantial evidence, and *our* task, in reviewing the grant or denial of such a writ, is to step into the trial court's shoes and independently examine for ourselves whether *the agency's* findings are supported by substantial evidence. (*JKH Enterprises*, at pp. 1057-1058.) An exonerated inmate has no fundamental, vested right to compensation (*Tennison v. California Victim Comp. & Government Claims Bd.* (2007) 152 Cal.App.4th 1164, 1181-1182 (*Tennison*); *Madrigal v. California Victim Comp. & Government Claims Bd.* (2016) 6 Cal.App.5th 1108, 1113 (*Madrigal*)), so we employ the more deferential review (*Holmes v. California Victim Comp. & Government Claims Bd.* (2015) 239 Cal.App.4th 1400, 1406 (*Holmes*)). We independently review any subsidiary legal questions, including the meaning of statutes. (*John v. Superior Court* (2016) 63 Cal.4th 91, 95-96 [meaning of statutes]; *City of San Diego v. Board of Trustees of California State University* (2015) 61 Cal.4th 945, 956 [legal questions reviewed de novo].)

**B.** ***Compensation for erroneously convicted and imprisoned persons***

"California has long had a system for compensating exonerated inmates for the time they spent unlawfully imprisoned" and thus "'away from society, employment, and their loved ones.'" (*People v. Etheridge* (2015) 241 Cal.App.4th 800, 806; *Larsen v. California Victim Comp. Bd.* (2021) 64 Cal.App.5th 112, 123 (*Larsen*); *Holmes, supra*, 239 Cal.App.4th at p. 1405.) That system is defined by various statutes (§§ 4900 et seq.,

14

1485.5, 1485.55) (the compensation statutes) as well as regulations promulgated under those statutes (§ 4906; Cal. Code Regs., tit. 2, § 640 et seq.).  Although those statutes have been recently amended, our Legislature has not expressly declared them to be retroactive to previously filed claims (§ 3; *Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1208-1209), so we describe the administrative system in place while Gonzales's claim was pending before the Board—that is, between August 2017 and September 2020.

Under that system, an inmate who has been "imprisoned in state prison" for "any part" of a felony sentence and who is "innocent of the crime" because, among other things, the crime "was not committed by him," may "present a claim" to the Board for compensation due to the "erroneous conviction and imprisonment."[7]  (§ 4900.)

If the inmate has already obtained a finding of "actual innocence" that establishes his "factual innocence by a preponderance of the evidence"—either as part of state or federal habeas relief or from a separately filed petition seeking a finding of actual innocence (under sections 851.8 or 851.86)—then the Board is automatically obligated to recommend that the Legislature compensate the inmate without the need for any hearing.  (§§ 4902, 1485.55, subds. (b), (c) & (e), 851.865, subd.

---

[7]     The statute of limitations for such claims changed on January 1, 2020, when our Legislature increased the limitations period from two years to ten years.  (Compare former § 4901, Stats. 2016, ch. 31 (Sen. Bill No. 836), § 251, eff. June 27, 2016, with § 4901, Stats. 2019, ch. 473 (Sen. Bill No. 269), § 2, eff. Jan 1, 2020).)  Although the administrative proceedings in this case straddle this legislative change, this is of no consequence because Gonzales filed his claim within the two-year window.

(a); *Larsen*, *supra*, 64 Cal.App.5th at pp. 123-124, 128-129 [finding by federal habeas court that inmate was "actually innocent" in order to overcome a procedural bar is equivalent to a finding of factual innocence by a preponderance of the evidence].) Making a prior judicial finding that the inmate is factually innocent preclusive makes sense, as doing so "streamline[s] the compensation process" and "ensure[s] consistency between the Board's compensation determinations" and the "earlier court proceedings" that have already decided the "identical" question that is presented to the Board in the compensation proceedings. (*Madrigal*, *supra*, 6 Cal.App.5th at p. 1118; *Tennison*, *supra*, 152 Cal.App.4th at p. 1175.)

In all other instances, however, the Board must convene an evidentiary hearing before a hearing officer. (Cal. Code Regs., tit. 2, § 644, subd. (a).) At that hearing, the inmate bears the burden of establishing, by a preponderance of the evidence, that they are "factually innocent" of the crime(s) for which they were erroneously imprisoned.[8] (§ 1485.55, subd. (b); § 4903, subd. (a); Cal. Code Regs., tit. 2, §§ 644, subd. (d)(1), 642, subd. (a)(3); *Holmes*, *supra*, 239 Cal.App.4th at pp. 1403, 1405; *Diola v. State Board of Control* (1982) 135 Cal.App.3d 580, 588, fn. 7.) The Board (through the hearing officer) may consider not only the prior record from the inmate's trial, but also any new evidence

---

[8] In a legislative amendment effective on January 1, 2022, the *People* now bear the burden of proving an inmate's guilt by clear and convincing evidence if the inmate is exonerated through the grant of a writ of habeas corpus in state or federal court. (Former § 4900, subd. (b), Stats. 2021, ch. 490 (Sen. Bill No. 446), § 3, eff. Jan. 1, 2022; former § 4902, subd. (d), Stats. 2021, ch. 490 (Sen. Bill No. 446), § 4, eff. Jan. 1, 2022; Cal. Code Regs., tit. 2, § 644, subd. (e).)

16

"relevant" to the question of the inmate's factual innocence. (Cal. Code Regs., tit. 2, § 641; § 4903, subd. (a).) But certain "factual findings and credibility determinations" are "binding" on the Board—namely, and as pertinent here, "the factual findings and credibility determinations establishing the court's basis for *granting*" (1) "a writ of habeas corpus," or (2) "an application for a certificate of factual innocence as described in Section 1485.5." (§ 4903, subd. (b), italics added; accord, § 1485.5, subd. (c) ["In a contested or uncontested proceeding [seeking a declaration of factual innocence], the express factual findings made by the court, including credibility determinations, in considering a petition for habeas corpus . . . or an application for a certificate of factual innocence, shall be binding on the . . . Board"].) The *denial* of an application for a certificate of factual innocence, by contrast, is *not* binding on the Board. (§ 1485.55, subd. (d) [no "presumption" "exist[s]" following the "failure to" "obtain a favorable ruling"].) If the inmate carries their burden,[9] the Board must recommend that the Legislature compensate the inmate. (§ 4904.)

The statutorily prescribed rate of compensation is $140 per day of incarceration served, although the Legislature retains discretion not to award such compensation. (§ 4904.)

---

[9] In addition to establishing innocence by a preponderance of the evidence, the inmate also must show "the pecuniary injury" they sustained as a result of the "erroneous conviction and imprisonment." (§§ 4903, subd. (a), 4900, 4904.) That second element is not at issue here, where the People stipulated to Gonzales's pecuniary injury if he first proved his factual innocence.

17

## II.    Analysis

In light of these pertinent legal principles, the overarching question we confront is whether substantial evidence supports the Board's ruling that Gonzales failed to sustain his burden of proving his factual innocence of the attempted murder and firearm charges by a preponderance of the evidence. Gonzales asserts we need not examine the substantiality of the evidence because he is entitled to administrative mandamus relief for three preliminary reasons. Specifically, he argues that (1) the Ninth Circuit's grant of habeas relief is synonymous with a finding of factual innocence, and automatically entitles him to compensation; (2) the Board erred by not treating the Ninth Circuit's "factual findings" as "binding"; and (3) the Board committed other procedural errors. Only if these preliminary arguments fail must we assess the substantiality of the evidence supporting the Board's ruling.

### A.    *Does a grant of habeas relief based on insufficiency of the evidence compel a finding of the inmate's factual innocence by a preponderance of the evidence?*

The answer is "no," and we reach this conclusion for two reasons.

First, a court's invalidation of a conviction due to insufficiency of the evidence is not equivalent to a finding of factual innocence. A finding that the evidence was insufficient to support a conviction means only that there was not enough evidence presented at trial for a reasonable jury to find the inmate guilty beyond a reasonable doubt. (*United States v. Powell* (1984) 469 U.S. 57, 67; *People v. Covarrubias* (2016) 1 Cal.5th 838, 891.) Such a finding is different from the finding of

18

factual innocence that entitles an inmate to compensation in three significant ways.

For starters, the standard of proof is not the same. Rather than a habeas court's task of assessing whether the evidence is sufficient to support a finding of guilt *beyond a reasonable doubt*, the Board's task is to examine whether the evidence is sufficient to support a finding of innocence *by a preponderance of the evidence*. The former requires that the evidence imbue the factfinder with an "abiding conviction" in the truth of the finding (CALCRIM No. 220); the latter requires merely that the evidence makes the finding more likely than not (e.g., *Masellis v. Law Office of Leslie F. Jensen* (2020) 50 Cal.App.5th 1077, 1093). This is why a person acquitted of murder may still be held civilly liable for wrongful death—evidence that is not enough to establish guilt by the higher standard can still establish liability by the lower standard.

Next, the burden of proof is not the same because it is assigned to a different party. Rather than a habeas court's task of asking whether *the People* proved the inmate's *guilt*, the Board's task is to examine whether *the inmate* has proven his *factual innocence*. This means that in cases where the evidence is in equipoise, that "tie" must be resolved against the inmate (as the party assigned the burden) and against relief—which further expands the universe of instances in which evidence insufficient to prove guilt beyond a reasonable doubt may nevertheless not entitle an inmate to a finding of factual innocence. This is precisely what our Supreme Court, the United States Supreme Court, and every other court to consider the issue have consistently and uniformly concluded—namely, that a finding of legal insufficiency due to the "'prosecution's failure of proof'" at

19

trial is *not* necessarily equivalent to a finding of factual innocence by a preponderance of the evidence.  (*People v. Adair* (2003) 29 Cal.4th 895, 907; *Bousley v. United States* (1998) 523 U.S. 614, 623 [distinguishing "actual innocence" requiring proof that "'it is more likely than not that no reasonable juror would have convicted [an inmate]'" from "mere legal insufficiency" of the evidence at trial]; *Larsen*, *supra*, 64 Cal.App.5th at p. 131, fn. 11 ["a jury's acquittal of a defendant after considering evidence admitted during a criminal trial is not a determination that the defendant is innocent, only that he or she is 'not guilty'"].)

And significantly, the records in the two tribunals are not the same:  A habeas court reviewing the sufficiency of the evidence is limited to the trial record, while the Board is charged with considering the trial record *and* any further "relevant" evidence the parties elect to present.  (Cal. Code Regs., tit. 2, § 641, subd. (c).)  What is more, this additional evidence includes some evidence that may have been excluded at trial.  (*Id.*, subd. (d) ["Evidence . . . may be admitted even though there is a common law or statutory rule which might make its admission improper over objection in any other proceeding"].)  This leeway makes perfect sense, as the Board's task is to get to the bottom of whether the inmate is indeed innocent of the crime.  Thus, to illustrate, an inmate who persuades a habeas court that the evidence *in the trial record* was insufficient to convict him of distributing narcotics would not be entitled to a finding of factual innocence before the Board if a telephone call containing the inmate's confession and recorded without permission in violation of section 632 was excluded at trial but admitted before the Board.

20

Second, our Legislature's recent amendment of the compensation statutes confirms that a court's grant of relief on habeas corpus is *not* the equivalent of an inmate proving his factual innocence by a preponderance of the evidence. In 2021, our Legislature enacted Senate Bill No. 446 (2021-2022 Reg. Sess.), which for the first time erected a presumption that the dismissal of convictions following the grant of a habeas petition automatically entitles an inmate to compensation unless the People, at a Board hearing, prove the inmate's guilt by clear and convincing evidence. (§ 4900, subd. (b), Stats. 2021, ch. 490 (Sen. Bill No. 446), § 3, eff. Jan. 1, 2022; § 4902, subd. (d), Stats. 2021, ch. 490 (Sen. Bill No. 446), § 4, eff. Jan. 1, 2022.) If, as Gonzales asserts, any grant of habeas relief already automatically entitles an inmate to compensation, Senate Bill No. 446's amendments would be entirely superfluous. Because we do not presume that our Legislature engages in idle acts (*Elsner v. Uveges* (2004) 34 Cal.4th 915, 935 [amendment of statute is presumed to change its meaning and effect]; *Stockton Teachers Assn. CTA/NEA v. Stockton Unified School Dist.* (2012) 204 Cal.App.4th 446, 461), our Legislature's own actions confirm that a grant of habeas relief is not equivalent to a finding of actual innocence.[10]

Gonzales resists this conclusion with one further argument. Specifically, he makes the two-step argument that the Ninth Circuit's finding of insufficient evidence compels a finding of factual innocence because (1) a finding of legal insufficiency compels a finding of factual innocence under section 851.8 in *People v. McCann* (2006) 141 Cal.App.4th 347, 355-358

---

**10** This is also why we reject Gonzales's argument, raised for the first time in his reply brief, that Senate Bill No. 446 merely clarified existing law.

(*McCann*); and (2) a finding of factual innocence under section 851.8 compels a finding of factual innocence under the compensation statutes. Although the second step of Gonzales's argument is correct (§§ 4902, subd. (a), 1485.55, subds. (b), (c) & (e), 851.865, subd. (a); *Tennison*, *supra*, 152 Cal.App.4th at p. 1175 [section 851.8 proceedings and proceedings for compensation "concern the identical issue: whether the evidence proves the defendant did not, *in fact*, commit a particular crime"]), the first step of his argument is incorrect: *McCann* does not establish a broad rule that a finding of legal insufficiency equates to a finding of factual innocence. Instead, *McCann* stands for a far narrower corollary that legal insufficiency equates to a finding of factual innocence when the insufficiency ruling rests on the finding that the inmate "*could not possibly have been guilty*" of the crime(s) at issue (in *McCann*, due to the doctor-inmate having a valid license and due to the expiration of the statute of limitations for a lesser included offense). (*McCann*, at p. 358, italics added; *People v. Gerold* (2009) 174 Cal.App.4th 781, 793 [reading *McCann* as standing solely for this narrower proposition].) Because nothing indicates that Gonzales "could not possibly have been guilty" of the crimes in this case, this case falls outside the boundaries of *McCann*'s corollary.

**B.** ***Did the Board disregard the statutory mandate to treat the Ninth Circuit's "factual findings" as "binding"?***

To answer this question, we must ask two subsidiary questions: (1) What is a "factual finding" for purposes of the compensation statutes, and (2) did the Board disregard any such "factual findings"?

1.      *What is a "factual finding" within the meaning of section 4903, subdivision (b)?*

Section 4903, subdivision (b), requires the Board to treat as "binding" "the factual findings and credibility determinations establishing the court's basis for *granting* a writ of habeas corpus." (Italics added.)  The compensation statutes do not define "factual findings"; the closest analogue is the definition for "express factual findings" within the habeas statutes (and, specifically, in section 1485.5), which defines them as "findings established as the basis for the court's ruling or order."  (§ 1485.5, subd. (d).)  But does this refer to the *factual* basis for the court's ruling, the *legal* basis for that ruling, or both?

It clearly encompasses the *factual* basis.  Thus, "factual findings and credibility determinations" by a habeas court certainly—and traditionally—include (1) the court's ultimate findings of fact (such as that the evidence was insufficient to establish guilt beyond a reasonable doubt, or that trial counsel was constitutionally ineffective); and (2) the court's subsidiary findings of fact and credibility determinations, made after the court has entertained new evidence that the court has observed firsthand during the habeas proceedings, which is commonplace as many defendants seek habeas relief on the basis of constitutional grounds that require additional factfinding beyond the trial record (such as constitutional claims involving wrongful withholding of discovery, juror misconduct, or the ineffective assistance of counsel).

But do "factual findings and credibility determinations" also reach the *legal* basis for the habeas court's ruling?  More to the point, do "factual findings" include the habeas court's summary of, observations about, and characterizations of the

trial record when the habeas court is *not* finding *facts* after entertaining new evidence but is instead making a legal assessment, after reviewing the static record from the trial proceedings, about whether that record contains sufficient evidence to support a conviction?  In other words, if a habeas court summarizes the trial evidence or otherwise comments that some or all of the evidence is "weak" as part of its rationale for concluding that the evidence was insufficient, is that summary or commentary *itself* a "factual finding"?

We conclude the answer is "no" for three interrelated reasons.

First, the fact that a habeas court summarizes or comments on the static trial record is not enough to make that summary or commentary a "factual finding" of that court.  Courts make comments all the time that are not "factual findings":  A court's finding that a juvenile defendant suffers from "'irreparable corruption'" warranting a lifetime sentence is not a "factual finding" (*People v. Blackwell* (2016) 3 Cal.App.5th 166, 192); a court's "observation[s]" or "remark[s]" about whether an item was an instrumentality of a crime is not a "factual finding" (and is instead a "legal determination[]") (*People v. Nottoli* (2011) 199 Cal.App.4th 531, 557, fn. 12); and a court's commentary about the "subject of selective enforcement" in the course of ruling on a motion to suppress is not a "factual finding" (*People v. Superior Court (Brown)* (1980) 111 Cal.App.3d 948, 952).

Second, "factual findings" are typically findings that can be reviewed for substantial evidence (e.g., *City of San Marcos v. Loma San Marcos, LLC* (2015) 234 Cal.App.4th 1045, 1053) and "credibility determinations" are determinations that are unreviewable unless the testimony at issue is ""physically

24

impossible or inherently improbable"'"" (*People v. Prunty* (2015) 62 Cal.4th 59, 89 (conc. & dis. opn. of Cantil-Sakauye, C.J.)). Such deference is accorded to these findings and determinations because the courts later reviewing them were not in the proverbial room to hear and observe the evidence firsthand. But a habeas court's summary of the trial record or its commentary about the relative weakness of evidence based on that record is not something that the court observed firsthand, and such a summary or commentary is not a finding that can be reviewed in any meaningful way for substantial evidence or subjected to the standards for assessing credibility determinations. This mismatch supports the notion that such a summary of or commentary on the trial record is not itself a "factual finding."

Third and lastly, treating a habeas court's summary or commentary about the trial record as "factual findings" or "credibility determinations" would make them "binding" on the Board, yet the Board is explicitly tasked with considering *new and additional evidence*. If commentary about evidence in the trial record being "weak" proof on a particular issue were binding, then the introduction of new evidence on that issue in the Board proceedings would be pointless, thereby rendering the evidentiary provisions in the compensation statutes governing the Board's proceedings superfluous. Our task, however, is to give effect to those provisions—not to nerf them. (*People v. Villatoro* (2012) 54 Cal.4th 1152, 1173 (conc. & dis. opn. of Corrigan, J.); see also *Spanish Speaking Citizens' Foundation, Inc. v. Low* (2000) 85 Cal.App.4th 1179, 1214 [rules governing interpretation of statutes also apply to regulations].)

Gonzales urges us to treat *every* comment a habeas court makes as binding because that is the only way to ensure

consistency between the rulings of the court and the Board.  For support, he relies on *Madrigal*, *supra*, 6 Cal.App.5th 1108.  To be sure, *Madrigal* held that a habeas court's "characteriz[ations of] the relative strength of the defense and prosecution evidence" at trial constituted "factual findings" that were "binding" on the Board.  (*Id.* at pp. 1118-1119.)  *Madrigal* cited two reasons for its holding—namely, that (1) nothing in section 4903 expressly says that "factual findings" do *not* reach so far, and (2) giving the term an expansive ruling more broadly ensures consistency between the habeas court's ruling and the Board's ruling.  (*Ibid.*)  We are unpersuaded by the first reason because *Madrigal* did not examine any of the considerations about the general concept of "factual findings" we have set forth above; from our perspective, nothing in section 4903 expressly shows an intent to adopt a definition of "factual finding" that so vastly deviates from the general concept.  We are unpersuaded by the second reason as well because section 4903 did not purport to adopt a consistency-at-all-costs rule; had it wanted to, our Legislature could have declared "*all* findings" or "all observations" or "all commentary" to be binding.  Instead, it limited its rule—and the consistency demanded by that rule—to ultimate findings of fact and to subsidiary "factual findings and credibility determinations."  We decline to rewrite the statute to reach a broader universe of findings (*Jarman v. HCR ManorCare, Inc.* (2020) 10 Cal.5th 375, 392), and accordingly and respectfully part ways with *Madrigal*.

2. *Did the Board give "binding" effect to any "factual findings" or "credibility determinations" of the Ninth Circuit?*

(i) Analysis

We conclude that the Board treated as "binding" the Ninth Circuit's "factual findings" and "credibility determinations" as we have defined them above. That is because the Board treated as binding the Ninth Circuit's finding that there was legally insufficient evidence to convict Gonzales of attempted premeditated murder and shooting a firearm from a vehicle and because the Ninth Circuit's further summary of and commentary on the trial record do not constitute "factual findings." Gonzales resists this latter conclusion, urging that the Ninth Circuit's summary and commentary should be accorded the status of "factual findings" because the Ninth Circuit's detailed, "piece-by-piece" summary and commentary was a "rarity" that went "above and beyond" the typical analysis. But the scarcity or depth of a habeas court's summary and commentary on the trial record does not somehow transmute such summary and commentary into binding "factual findings."

But even if we were to apply *Madrigal*'s more expansive definition of "factual findings," we still conclude that the Board treated the Ninth Circuit's summary of and commentary on the trial record as "binding." The Ninth Circuit's summary and commentary on the trial record can be grouped into three categories:

● *Ninth Circuit's summary of evidence <u>not</u> presented at trial.* The Ninth Circuit commented that no witness identified Gonzales or any occupant of the Cadillac from which the shots were fired (as its "[f]irst" reason), that no witness testified that

27

the shooter wore a baseball cap that matched the Pirates cap Gonzales wore that night (as part of its "[s]econd" reason), that no witness testified that anyone with Gonzales's moniker "Knuckles" was "connected with the shooting" (as another part of its "[s]econd" reason), that Gonzales denied being the shooter (as part of its "[t]hird" reason), and that police never found any firearms or firearm paraphernalia at Gonzales's house (as its "[s]ixth" reason). This commentary summarizes the absence of any *direct* evidence of Gonzales's involvement with the crimes. The Board at no point indicated that any direct evidence tied Gonzales to the shooting; instead, the Board relied solely on the circumstantial evidence that refuted Gonzales's claim of factual innocence. Accordingly, the Board treated this commentary of the Ninth Circuit as binding.

● *Ninth Circuit's commentary that certain pieces of circumstantial evidence, when examined individually, did not tie Gonzales to the crime(s).* The Ninth Circuit also commented that Gonzales's "gang affiliation" with the Playboyz and donning a baseball cap with the Playboyz's self-appropriated logo did not by itself "distinguish [Gonzales] from other people present on the night of the shooting" (as part of its "[s]econd" reason), that the witnesses' description of the *color* of the Cadillac from which shots were fired did not by itself mark Gonzales as the shooter because that description did not match Gonzales's reporting of the color of the Cadillac in which he was a passenger (as part of its "[t]hird" reason), and that the presence of two particles of gunshot residue on Gonzales's right hand did not by itself establish that Gonzales used or was near a firearm that night because that small amount of residue was "just as likely" the result of touching a surface contaminated with gunshot residue

28

(as its "[f]ifth reason").  This commentary set forth the Ninth Circuit's view that each of these items of circumstantial evidence were not, by themselves, sufficient to tie Gonzales to the crimes. The Board at no point indicated to the contrary; instead, the Board accepted that commentary but went on to reason that Gonzales's gang affiliation and wearing of gang attire, his admitted presence in the backseat of a newer model Cadillac with rims at the very same time and location of the shooting, and the presence of gunshot residue that was equally likely to be caused by his firing a gun as by other causes refuted Gonzales's claim of factual innocence *when that evidence was considered <u>collectively</u>*.

● *Ninth Circuit's summary of evidence that was superseded by additional evidence presented to the Board*.  The Ninth Circuit also commented that Gonzales "did not clearly admit" during his post-arrest interview that he exchanged words with the men on the street corner prior to the shooting (as its "[f]ourth reason").  The Board acknowledged that the Ninth Circuit's commentary was correct *on the trial record considered by the Ninth Circuit*, and accepted that commentary as binding. But, consistent with the evidentiary procedures used in compensation proceedings, the People introduced to the Board an enhanced audio file of Gonzales's recorded post-arrest interview, which (contrary to Gonzales's representation at oral argument in this case) was not in the trial record before the Ninth Circuit, in which Gonzales *did* clearly admit that he asked those men, "Oh, where are you fools from, dawg?"—which is what witnesses heard the shooter ask those men before opening fire.  And when confronted with this new evidence, Gonzales admitted during his testimony before the Board that the enhanced audio file accurately recorded what he told the police.  Because, as noted

29

above, the compensation hearing procedure *contemplates* the introduction of new evidence before the Board, the Board did not err in giving effect to this uncontroverted new evidence over the Ninth Circuit's finding, which was based, by definition, on a different and more limited record.

(ii)     Gonzales's argument

Gonzales nevertheless maintains that the Board gave the Ninth Circuit's commentary "lip service."  More specifically, Gonzales argues that the Ninth Circuit made factual findings that the gunshot residue on his right hand, that he was wearing a baseball cap, that he was a gang member, and that he was present at the party were "not evidence of his guilt" *and* that the Ninth Circuit made a factual finding "that no other evidence connected [him] to the shooting."  These findings, Gonzales continues, obligated the trial court—and obligates us—to review the Board's ruling not for substantial evidence but rather "through the lens of the [Ninth Circuit] that reversed [his] conviction."

We reject Gonzales's argument because its central premise is invalid.  Contrary to what Gonzales repeatedly says in his briefs, the Ninth Circuit did *not* hold that the individual pieces of circumstantial evidence it addressed were "not evidence of his guilt."  Rather, it held that each piece did not by itself tie Gonzales to the crimes.  In other words, the Ninth Circuit "found" that these individual pieces of circumstantial evidence were not, on their own, *dispositive*; it never "found" that they were *irrelevant*.  Nor could it.  Gang affiliation by itself is not enough to convict, but it is certainly *relevant* because it is evidence of motive.  (*People v. Duong* (2020) 10 Cal.5th 36, 64; *People v. Holmes* (2022) 12 Cal.5th 719, 772.)  Along the same lines, mere

30

presence at the scene of a crime is not enough to convict, but it is certainly relevant as evidence of opportunity. (See *People v. Campbell* (1994) 25 Cal.App.4th 402, 409 [aiding and abetting].) The Board could and did logically treat as binding the Ninth Circuit's commentary about each individual piece of evidence while at the same time concluding that, collectively, they refuted Gonzales's claim of factual innocence because innocence—like guilt—is a function of the collective impact of the *totality* of the evidence, not the impact of each individual piece considered in isolation. (See *People v. Diaz* (1992) 3 Cal.4th 495, 537 [item of evidence, though susceptible to a possible innocent explanation, was "link in the circumstantial chain of evidence" that, "considered in its entirety," "pointed unerringly to" defendant's guilt].)

**C.   *Did the Board commit other procedural errors?***

Gonzales argues that the Board erred by making two further procedural errors.

First, Gonzales urges that the Board held him to a higher burden of proof than preponderance of the evidence because, at one point in its 31-page ruling, the Board stated that "ample circumstantial evidence in the administrative record nevertheless suggests that Gonzales *might be guilty*." (Italics added.) This argument is frivolous. Even if we assume that the Board's comment that Gonzales "might be guilty" is a different standard than whether he was "more likely than not" factually innocent, the Board elsewhere in its ruling repeatedly (that is, no fewer than five other times) cited this proper standard. In these instances, we may—and do—comfortably conclude that the Board applied the proper standard of proof. (*People v. Mayfield* (1993) 5 Cal.4th 142, 196 [where "[t]he record . . . as a whole" indicates

31

that the "court" "applied the proper concept," "isolated" "misstate[ments of] the applicable standard" are to be disregarded].)

Second, Gonzales asserts that the Board improperly gave binding effect to the San Bernardino County Superior Court's finding that he was *not* factually innocent, even though section 4903, subdivision (b), only gives binding effect to the "grant[]" of a petition for factual innocence and section 1485.55, subdivision (d), prohibits giving any effect to the denial of such a petition. The Board did state that it was treating the San Bernardino County Superior Court's finding as "binding." This is not surprising, as both parties—including Gonzales—urged the Board to do so. Even if we overlook that this error was apparently invited by Gonzales, the Board's actions ended up speaking louder than its words: Although the Board *stated* it was treating the San Bernardino County Superior Court's denial of the factual innocence petition as binding, it did not actually do so. Instead, it examined the original trial record, the evidence presented to the San Bernardino County Superior Court, and the evidence presented to the hearing officer and independently examined whether that evidence satisfied Gonzales's burden of showing his factual innocence by a preponderance of the evidence.

D.	***Does substantial evidence support the Board's ruling that Gonzales failed to establish his factual innocence by a preponderance of the evidence?***

Because we have concluded that none of Gonzales's preliminary objections to the Board's analysis have merit, we turn to the ultimate question presented in this appeal: Does substantial evidence in the administrative record support the

32

Board's ruling that Gonzales failed to prove his factual innocence by a preponderance of the evidence?

We independently agree with the trial court that the answer is "yes."

Deferring to the Board's findings based on the evidence and its credibility determinations, substantial evidence supports the Board's conclusion that Gonzales did not carry his burden of proving his factual innocence by a preponderance of the evidence. To be sure, there was no direct evidence tying him to the shooting. But the sum total of circumstantial evidence is sufficient to support a finding that he was not likely factually innocent. The evidence showed that Gonzales was at the location where the shooting occurred *when it occurred*; that he was the backseat passenger in a newer model Cadillac with rims like the one from which witnesses saw shots fired; that he had particles of gunshot residue on his hand that indicated he came in contact with a discharged firearm;[11] that he was at a minimum affiliated

---

11      Gonzales is incorrect in his repeated characterization of the trial record as establishing that the particles of gunshot residue "more than likely" came from him touching a surface contaminated with gunshot residue rather than from him discharging a firearm. The technician who analyzed the gunshot residue kit testified at the 2009 jury trial that Gonzales either "fired a firearm, handled a firearm, ha[d] been in close proximity of [a] discharged firearm, [or] contacted a surface that contain[ed] gunshot residue," but the technician could not "tell" "which of those four options [was] in play" in this case. The Ninth Circuit's summary of the trial evidence—that any one of those options was "just as likely" the cause as the others—is consistent with that testimony. Thus, it was Gonzales's burden to put on new evidence before the Board substantiating his theory—contrary to

or aligned with the Playboyz street gang and wearing their gang-themed attire, and that victims were wearing clothing affiliated with a different street gang; and that Gonzales asked the victims gang-related questions ("Oh, where are you fools from, dawg?") after they "talk[ed] shit" to him, as witnesses had heard the shooter ask. Although Gonzales told police in his post-arrest interview that the Cadillac *he* was in was "red" "like a fire truck" or "light red" (rather than "black" or some other "dark" color as reported by witnesses), although Gonzales repeated that statement during his testimony before the San Bernardino County Superior Court and the Board, and although Gonzales's friend Herrada submitted a declaration indicating the same, it is not unreasonable for a red car to appear "dark" when driving by during a nighttime exchange. Plus, the Board found Gonzales's testimony and Herrada's declaration to be not credible—a finding to which we must defer and a finding that is also amply supported by the sheer number of times Gonzales changed his story. Gonzales's ever-changing statements are also reasonably viewed as circumstantial evidence of consciousness of guilt, which adds further weight to the Board's determination that Gonzales did not establish his factual innocence by a preponderance of the evidence.

Gonzales objects that the Board should not be able to make its own credibility determinations (and, relatedly, that the Board must defer to the Ninth Circuit's "de facto" finding that *he* was credible), but Gonzales is wrong. The Board considered *new* evidence, and is within its rights to evaluate whether that evidence is credible. And the Ninth Circuit made no credibility

_____

the trial record—that the particles "more than likely" came from an innocent source.

34

finding about Gonzales: The Ninth Circuit *could not* find Gonzales's trial testimony credible because Gonzales did not testify at his trial, and the Ninth Circuit *did not* find his post-arrest statements credible (and instead commented on the inconsistency between his statements when accepted at face value and what other witnesses said about the color of the Cadillac). Gonzales additionally faults the Board's finding that he was "not credible" because it relied on inconsistencies made during his post-arrest interview because, according to Gonzales, such interviews are inherently coercive and his interview specifically was coercive given he was 17 years old at the time, but Gonzales ignores that he repeated many of his inconsistencies during his subsequent two stints on the witness stand (when he voluntarily testified at ages 26 and 27 years old and with the assistance of counsel) and ignores that we are not in a position to independently reweigh his credibility. Gonzales additionally asserts that his lack of credibility is not enough to conclude that he was not factually innocent. Gonzales is absolutely right: It is inappropriate to take a "divide-and-conquer" approach that looks only at each piece of evidence in isolation. (*United States v. Arvizu* (2002) 534 U.S. 266, 274; *People v. Barnes* (1986) 42 Cal.3d 284, 305 [looking to the "totality" of the evidence].) But the Board did not take that approach; instead, it examined the totality of the circumstantial evidence as well as its determinations about Gonzales's and Herrada's credibility, and found that—collectively—this evidence did not establish that Gonzales was more likely than not factually innocent.

**DISPOSITION**

The judgment is affirmed.  The parties are to bear their own costs on appeal.

**CERTIFIED FOR PUBLICATION.**


_____, J.
HOFFSTADT


We concur:


_____, P. J.
LUI


_____, J.
ASHMANN-GERST