Filed 8/31/15

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JESSICA SANDRA HOLMES,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CALIFORNIA VICTIM COMPENSATION<br>AND GOVERNMENT CLAIMS BOARD,<br><br>    Defendant and Respondent. | D066716<br><br><br><br>(Super. Ct. No. 37-2014-00020427-<br>CU-WM-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County,

Timothy B. Taylor, Judge.  Affirmed.

Robert C. Schlein & Associates, Robert C. Schlein and Sarah C. Jones for Plaintiff

and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney

General, Michael P. Farrell, Assistant Attorney General, Kenneth N. Sokoler and Larenda

R. Delaini for Defendant and Respondent.

California allows a person erroneously convicted of a crime to file a claim for

indemnity with the California Victim Compensation and Government Claims Board (the

Board) for pecuniary injury sustained through the erroneous conviction and imprisonment or incarceration. (Pen. Code, §§ 4900 et seq., undesignated statutory references are to this code.) In this case, we address whether the claimant met his burden of showing, by a preponderance of the evidence, that he sustained pecuniary injury as a result of his wrongful conviction. The Board found the claimant had not sustained pecuniary injury. The trial court subsequently denied claimant's petition for a writ of mandate, finding claimant had not satisfied his burden of proof. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In 1992, in the state of Rhode Island, Charles Herbert Holmes III was convicted of second degree child molestation. (Holmes passed away during the pendency of this appeal and his daughter, Jesica Sandra Holmes, was substituted as the petitioner. All references to Holmes in this opinion are to Mr. Holmes, the original claimant.) Based on the Rhode Island conviction, Holmes began registering as a sex offender in California. In 2005, Holmes pled guilty for failing to register as a sex offender. He spent about six years, 11 months in custody for the conviction. In 2013, he filed with the Board an erroneously convicted person claim under section 4900.

Holmes alleged he was entitled to compensation for the time he served in prison for failing to register as a sex offender because he was not actually required to register as a sex offender in California. The Attorney General submitted a letter in response to the claim, noting that Holmes may not have been required to register as a sex offender based on his Rhode Island conviction. The Attorney General indicated she would oppose the

2

claim on the ground Holmes failed to demonstrate he had suffered pecuniary injury as a result of his incarceration.

A hearing officer issued a proposed decision finding Holmes had proven by a preponderance of the evidence that the crime for which he pleaded guilty was not committed and that Holmes had suffered pecuniary injury as a result of the conviction. A three person panel of the Board reviewed Holmes's claim. At the hearing, no one contested the fact Holmes was not required to register as a sex offender; accordingly, the arguments focused on the pecuniary injury requirement. Following the hearing, the Board, in a 2-1 vote, rejected the hearing officer's proposed decision, finding that Holmes failed to establish he had suffered pecuniary injury.

Holmes filed a petition for writ of mandate seeking to set aside the Board's denial of his claim. The trial court issued a tentative ruling denying Holmes's petition for writ of mandate, finding the Board did not abuse its discretion in rejecting the claim on the ground Holmes had failed to prove that he suffered pecuniary injury. After hearing oral argument, the trial court confirmed its tentative ruling and later entered judgment denying the claim. Holmes timely appealed.

## DISCUSSION

### I. *Claim for Erroneous Conviction and Imprisonment or Incarceration*

The purpose behind section 4900 is to offer a remedy for individuals who prove their innocence and secured their freedom after they have been erroneously convicted by compensating them for "each day he or she spent illegally behind bars away from society, employment, and their loved ones." (Sen. Com. on Public Safety, Analysis of Sen. Bill

3

No. 618 (2013-2014 Reg. Sess.) as amended April 15, 2013.)  Section 4900 provides that anyone who was convicted of a felony and served time in prison may present a claim for compensation "for the pecuniary injury sustained by him or her through the erroneous conviction and imprisonment."  If the evidence shows the claimant (1) did not commit the charged crime and (2) sustained a pecuniary injury through the erroneous conviction and imprisonment, the Board "shall report the facts of the case and its conclusions to the next Legislature, with a recommendation that an appropriation be made by the Legislature for the purpose of indemnifying the claimant for the pecuniary injury."  (§ 4904.)  The amount of the appropriation recommended shall be $100 per day of incarceration served subsequent to the claimant's conviction.  (*Ibid.*)

The Board has adopted rules and regulations for the presentation and processing of claims for compensation filed by persons allegedly erroneously convicted of crimes. (*Ebberts v. State Board of Control* (1978) 84 Cal.App.3d 329, 333; citing Cal. Admin. Code, tit. 2, §§ 640-647.5.)  The regulations provide that claimants may establish pecuniary injury by: (1) showing gainful employment prior to being incarcerated; (2) showing they could have been gainfully employed if not for being incarcerated; or (3) presenting other evidence showing that, as a result of being incarcerated, they suffered a monetary loss.  (Cal. Code Regs., tit. 2, § 640, subd. (c).)  The claimant has the burden of proving, by a preponderance of the evidence, all issues necessary to establish eligibility.  (*Id.* at § 644, subd. (c)(1).)  " 'Preponderance of the evidence' is usually defined in terms of 'probability of truth,' for example as evidence that, ' "when weighed

4

with that opposed to it, has more convincing force and the greater probability of truth." ' "
(*Leslie G. v. Perry & Associates* (1996) 43 Cal.App.4th 472, 482-483.)

"All relevant evidence shall be admitted if it is the sort of evidence on which reasonable persons are accustomed to rely in the conduct of serious affairs." (Cal. Code Regs., tit. 2, § 641, subd. (c).) Such evidence "may be admitted even though there is a common law or statutory rule which might make its admission improper over objection in any other proceeding." (*Id.* at § 641, subd. (d).) "The hearing officer may use relevant experience, technical competence and specialized knowledge to evaluate the evidence." (*Id.* at § 645, subd. (e).) The hearing officer is required to prepare a proposed decision, based on the evidence presented at the hearing and matter subject to judicial notice, containing a statement of the factual and legal bases for the proposed decision. (*Id.* at § 645, subds. (b) & (d).) "If the factual basis for the proposed decision includes a determination based substantially on the credibility of a witness, the proposed decision shall identify specific evidence that supports the credibility determination, which may include but is not limited to demeanor, manner or attitude." (*Id.* at § 645, subd. (c).)

## II. *Standard of Review*

The Board's ruling on a claim for compensation is subject to writ review under Code of Civil Procedure section 1094.5. (See *Tennison v. California Victim Comp. & Government Claims Bd.* (2007) 152 Cal.App.4th 1164, 1180 (*Tennison*).) The trial court reviews the denial of a claim for compensation under section 4900 by examining the entire administrative record to determine whether the Board's findings were supported by substantial evidence, resolving all conflicts in the evidence and drawing all inferences in

5

support of the findings. (*Tennison*, at pp. 1180, 1182.) "'[Our] function is identical to that of the trial court. [We] review[] the administrative record to determine whether the [Board's] findings were supported by substantial evidence, resolving all conflicts in the evidence and drawing all inferences in support of them. [Citations.]' [Citation.]" (*Id.* at p. 1182.) Substantial evidence "'must be "'of ponderable legal significance,'" which is reasonable in nature, credible and of solid value.'" (*Id.* at p. 1180.) "Inferences may constitute substantial evidence as long as they are the product of logic and reason rather than speculation or conjecture." (*Oregel v. American Isuzu Motors, Inc.* (2001) 90 Cal.App.4th 1094, 1101.)

### III. *Analysis*

It was undisputed that Holmes had been wrongfully convicted for failing to register as a sex offender. The Board's notice of decision denied Holmes's claim on the ground he failed to establish pecuniary injury as a result of his wrongful conviction. The Board found that Holmes was unemployed, recently out of prison and homeless at the time of his arrest. It also noted that Holmes worked for a short time after his incarceration as a cook in Rhode Island but was laid off and "is currently unemployed but collects cans for recycling to make income." Based on Holmes's "extensive criminal history and unemployment status at the time of his arrest," the Board concluded he had not demonstrated pecuniary loss as a result of his incarceration.

Holmes asserts the Board's finding is not supported by the record. Should we conclude the Board's findings are supported by substantial evidence, Holmes alternatively contends these findings do not support the Board's legal conclusions. As we shall

6

explain, substantial evidence supported the Board's determination that Holmes did not suffer pecuniary injury.

Pecuniary injury may be shown by gainful employment prior to being incarcerated and evidence that the claimant could have been gainfully employed if not for being incarcerated. (Cal. Code Regs., tit. 2, § 640, subd. (c).) "Gainful employment" is defined by Black's Law Dict. (10th ed. 2014) p. 641, col. 2 as "[w]ork that a person can pursue and perform for money." The Random House Unabridged Dict. (2d ed. 1993) p. 782 defines "gainful" as "profitable; lucrative."

To establish he suffered pecuniary injury as a result of being incarcerated, Holmes stated in his sworn claim form that prior to his incarceration in 2005, he worked full time as a cook at Christie's Restaurant in Newport, Rhode Island being paid about $8-9 an hour. During his incarceration, Holmes argued that he "cleaned dishes and cooked consistently" for four years with an unblemished work record. We have not located any evidence in the record to support this argument; however, the trial court found there was no dispute that Holmes worked while in custody. For purposes of analysis, we accept Holmes's statement that he worked for four years while incarcerated.

Substantial evidence supported the Board's implied conclusion that Holmes was not gainfully employed at the time of his arrest and would not have been gainfully employed if not for being incarcerated. Holmes has an extensive criminal history, starting with an arrest in Rhode Island for possessing marijuana when he was 18 years old. Over the next nine years, Holmes suffered four additional arrests in Rhode Island until his 1992 conviction for second degree child molestation. From 1995 to 2001,

7

Holmes suffered convictions and was periodically incarcerated in Florida for crimes including burglary, drug possession and larceny. Holmes presented no evidence showing *any* gainful employment during this time period.

Holmes's criminal history picks up in 2003 in California when he suffered a conviction for first degree burglary and was sentenced to four years in prison. At that time, Holmes admitted he "'did this stuff'" to support his methamphetamine addiction. He was paroled in March 2005, absconded, was returned to custody and again paroled in September 2005. In November 2005, he pleaded guilty to failing to register as a sex offender (the erroneous conviction). A probation report dated December 2005 indicated that at the time of his arrest in May 2005, Holmes was living on the street and collecting cans. He admitted to being under the influence of methamphetamine at the time of his arrest. Holmes told the probation officer that his last job was in Rhode Island as a line cook in 2002 and that he started using methamphetamine in 2003 and used it "'whenever he [could] get it,'" usually daily.

The Board impliedly rejected Holmes's sworn statement that prior to his incarceration in 2005, he worked full time as a cook in Rhode Island, citing Holmes's extensive criminal history and unemployment status at the time of his arrest. The Board was entitled to evaluate the credibility of Holmes's sworn statement in light of the contrary statement he made to a probation officer that he had not worked as a cook since 2002. (*Tennison*, *supra*, 152 Cal.App.4th at p. 1189 [Board properly treated evidence with skepticism and accorded it little weight]; Cal. Code Regs., tit. 2, § 645, subd. (c).) Additionally, Holmes's criminal history showed that in 2003, he suffered a California

8

conviction and was incarcerated until being paroled in March 2005. These records severely undercut Holmes's conclusory and unsupported statement that, prior to his 2005 erroneous conviction in California, he had gainful employment as a cook in Rhode Island. The lack of any documented employment history, Holmes's criminal history, and the fact Holmes was homeless and a methamphetamine addict when arrested, amply support the Board's implied conclusion that Holmes would not have been gainfully employed if not for his erroneous conviction. Put simply, the Board was entitled to make a credibility determination based on the conflicting evidence before it.

Holmes complains that the Board made its decision not based on the evidence, but based on the Board's personal disgust of his background and character. During the hearing, one of the Board members stated, "[I]f we find that [Holmes] has not been working and he has not suffered a loss, then I have a way out." Holmes suggests the Board completely disregarded the facts so it would not have to grant him compensation. We agree that the general character of a claimant is not relevant in evaluating whether the claimant suffered pecuniary injury. However, the background of the claimant, including the claimant's criminal history, is relevant as such evidence provides insight into whether the claimant had been, or could have been, gainfully employed. As here, such information may also show the claimant's evidence regarding gainful employment prior to an erroneous conviction is not credible.

Claimants may also show pecuniary injury with "other evidence showing that, as a result of being incarcerated, [they] suffered a monetary loss." (Cal. Code Regs., tit. 2, § 640, subd. (c).) Other evidence presented by Holmes included a statement in his claim

9

form that at the time he filed the claim form, he was working as a full-time cook at Patriot's Diner in Woonsocket, Rhode Island. He also presented a letter and receipts showing that since February 2014, he worked for Community Wide Clean-Up as a laborer earning $9 an hour for a minimum of six to eight hours daily. Holmes presented receipts showing he collects a variety of metals and then recycles them through Recon Recycling. Holmes also earned money working contracted projects such as moving and disposing of furniture, construction, gardening, and trash removal. He presented a table summarizing the work he performed for Community Wide Clean-Up starting in February 2014.

Evidence of employment *after* an erroneous incarceration may show a claimant is capable of obtaining gainful employment and may be relevant to whether a claimant was, or could have been, gainfully employed at the time of an erroneous conviction. However, based on the totality of the evidence presented here, the Board could reasonably conclude the evidence of postincarceration employment carried little weight. Notably, while Holmes stated he worked as a cook in Rhode Island for some unknown time period after his release, he provided no documents to support this assertion. In fact, although Holmes was released in November 2012, he provided no documents showing any employment until February 2014.

Additionally, postincarceration employment does not show a claimant "suffered a monetary loss" as a result of the erroneous conviction. (Cal. Code Regs., tit. 2, § 640, subd. (c).) We construe the phrase "suffered a monetary loss" as something different than whether the claimant was, or could have been, gainfully employed at the time of the erroneous conviction. For example, a claimant may suffer a monetary loss by losing the

10

equity in the claimant's home when the home is foreclosed upon as the result of the claimant's erroneous conviction. Here, Holmes presented no evidence suggesting he "suffered a monetary loss" as a result of his erroneous conviction.

In summary, substantial evidence supported the Board's conclusion that Holmes failed to demonstrate that he suffered pecuniary loss as a result of his erroneous incarceration. Since we conclude the Board's findings were supported by substantial evidence, Holmes alternatively argues the Board's findings did not support its legal conclusions. He contends the Board's ultimate determination to deny his claim was not founded in the law, but on its dislike of him as revealed by some of the Board's comments during the hearing and the erroneous finding in its decision that he "collects cans for recycling to make income."

Whether the Board's findings support the legal conclusions upon which it arrived at its ultimate determination presents a question of law. (*JKH Enterprises, Inc. v. Department of Industrial Relations* (2006) 142 Cal.App.4th 1046, 1058-1059.) "If the administrative record reveals the theory upon which the agency has arrived at its ultimate decision, the decision should be upheld so long as the agency found those facts that as a matter of law are essential to sustain the decision." (*Id.* at p. 1059.)

Here, the administrative record reveals the Board denied Holmes's claim because he failed to demonstrate any pecuniary loss as a result of his erroneous incarceration. While the transcript of the hearing contains comments from one of the Board members indicating he disliked the idea of compensating "a career criminal," this same Board member noted that if Holmes "has not been working and . . . has not suffered a loss, then I

11

have a way out."  While these comments may have been tactless, they do not show the Board ignored the law and abused its judicial discretion.  Rather, they show the Board correctly understood that if the claimant failed to show pecuniary injury, then it could properly deny the claim.

Finally, Holmes correctly notes the decision contains a misstatement of fact that he is currently unemployed but "collects cans for recycling to make income."  The evidence Holmes presented shows that starting in February 2014, he not only collected cans, but also other recyclable metals and performed other odd jobs for income.  Nonetheless, as indicated above, this evidence of postincarceration employment carries little weight.  On this record, this misstatement is of no consequence.

## DISPOSITION

The judgment is affirmed.  Respondent is awarded its costs on appeal.


MCINTYRE, J.

WE CONCUR:

HALLER, Acting P. J.

MCDONALD, J.

12